**ABC DISPOSAL SYSTEMS, INC., Appellant,**

v.

**DEPARTMENT OF NATURAL RESOURCES, Appellee.**

No. 03–0147.

Supreme Court of Iowa.

June 16, 2004.

Douglas H. Napier of Napier, Wolf & Napier, Fort Madison, for appellant.

Thomas J. Miller, Attorney General, and David R. Sheridan and David L. Dorff, Assistant Attorneys General, for appellee.

WIGGINS, Justice.

ABC Disposal Systems, Inc. (ABC) owns property in Hiawatha, Iowa, which it used for truck-to-trailer transfers of solid waste. Prior to investing in the equipment to perform truck-to-trailer transfers, ABC relied on advice from the Iowa Department of Natural Resources (DNR) that truck-to-trailer transfers did not require a sanitary disposal project permit. The DNR subsequently reversed its decision and ordered ABC to obtain a permit for its Hiawatha facility. It also levied a civil penalty against ABC in the sum of $5000 for ABC's failure to obtain a permit. On administrative appeal, the Iowa Environmental Protection Commission (Commission) affirmed the DNR's order that ABC was required to obtain a permit but reversed the Commission's order assessing the civil penalty. ABC sought judicial review of the Commission's decision in district court. The district court agreed with the Commission that ABC was required to obtain a permit for its Hiawatha facility. ABC appealed the district court's decision. Because we agree that ABC is required to obtain a permit for its Hiawatha facility, we affirm the district court.

## I. Background Facts and Proceedings.

ABC operates a solid waste collection business in Hiawatha, Iowa. In 1997, ABC began considering whether transfer trailers, which Brothers Industries (Brothers) manufactured, would be a good investment for ABC. Transfer trailers have expandable sides on the receiving end and a two-way walking floor. Brothers specially designed the transfer trailer for the direct truck-to-trailer transfer of materials such as solid waste. Using a ramp, the driver of the route-collection truck backs up into the transfer trailer and unloads its contents directly onto the trailer's floor. ABC's driver then hauls the transfer trailer to a landfill, where the waste is disposed. The advantage of transfer trailers is that it enables ABC to consolidate waste collected by two to three route-collection trucks in a single transfer trailer and transport large loads of solid waste to less expensive out-of-state disposal sites.

In the process of deciding whether to purchase transfer trailers, Ted Carter, a representative of ABC, met with a Brothers representative. As part of the sales pitch, the Brothers representative showed Carter a copy of a letter Brothers received from the DNR's solid waste section. The letter, which was dated November 20, 1996, stated, "a transfer station permit is not required in order for route-collection trucks to backup and unload into the rear of a transfer trailer with expandable side walls and a two-way walking floor."

In order to determine whether the above letter was legitimate and to ensure it was still the DNR's position that trans-

fer trailers did not require a permit, Carter contacted the author of the above letter, who reaffirmed his earlier position. Additionally, Carter contacted another DNR employee who told him the same thing.

Ultimately, Carter purchased four transfer trailers and tractors to pull the trailers. ABC used its property located in Hiawatha to transfer the solid waste from the route-collection trucks to the transfer trailers. The Hiawatha facility had a concrete ramp, which the drivers of the route-collection trucks used to back their trucks up to the transfer trailers. Once the route-collection truck and the transfer trailer were in position, the transfer would take place. After the transfer was completed, ABC would haul most of the solid waste it collected to a private landfill in Milan, Illinois, where ABC received more favorable tipping rates as compared to the tipping rate it received at the local Iowa landfill. On occasion, ABC has also taken solid waste to Iowa landfills. The transfer trailers loaded with solid waste remain on the Hiawatha facility for less than twelve hours, excluding weekends or holidays.

On July 8, 1998, the DNR informed Brothers that it was reversing its prior opinion concerning the need of a permit for truck-to-trailer transfers of solid waste. The letter stated, "A transfer station permit is now required for truck-to-truck transfer of solid waste." The letter also listed other requirements for applicants to submit in order to obtain a permit. Over three months later, the DNR sent a similar letter to ABC informing ABC of the change in its requirements. The letter gave ABC until January 8, 1999, to comply with the requirements for obtaining a permit. ABC argued it was not a "facility" under the statute and resisted the DNR's request to obtain a permit. From July 1999 to January 2001, there was no communication between the DNR and ABC. The DNR explains the lapse in time was because it was in the process of reviewing 567 other cases.

On November 29, 2000, at the request of the DNR, the Attorney General's office issued an opinion concerning the requirements for operation of solid waste transfer stations in Iowa. The opinion concluded, "solid waste transfer stations are sanitary disposal projects within the meaning of Iowa Code section 455B.301(18), for which permits are required pursuant to Iowa Code section 455B.305."

On January 5, 2001, the DNR once again informed ABC that it must obtain a sanitary disposal permit for its Hiawatha facility. The DNR gave ABC a deadline of February 28, 2001, to obtain the permit. ABC continued to deny it needed a permit. At ABC's request, on April 4, 2001, an inspector from the DNR observed and videotaped a transfer of solid waste from a route-collection truck to a transfer trailer. The purpose of the DNR inspection was to gather information regarding the process that is involved with the transfer of solid waste from the route-collection trucks to the enclosed trailers. The inspector reported ABC uses two or three transfer trailers each day to haul approximately forty tons of solid waste to the landfill. Further, the inspector observed a small amount of solid waste that escaped during the transfer, which a worker immediately recovered and placed in the transfer trailer. The inspector also observed a small amount of liquid dripping from the floor of the transfer trailer onto the concrete ramp. The liquid was leachate. Leachate is "fluid that has percolated through solid waste and which contains contaminants consisting of dissolved or suspended materials, chemicals, or microbial waste products from the solid waste." Iowa Code § 455B.301(9) (2001). ABC informed the

inspector an underground tank collects the leachate through a drain connected to the tank. The underground tank was on the property when ABC purchased the property. ABC had the drain installed by a third party, who is now deceased. No person at ABC knew anything about the size of the tank or the material from which it was constructed. ABC told the inspector it emptied the tank twice a week, depending on rainfall. After emptying the tank, ABC then would spread the leachate on construction debris, which absorbed more liquid than other waste materials. ABC would then put the construction debris in the transfer trailer with the other waste. After this inspection, the DNR maintained its previous position regarding ABC's need for a permit at the Hiawatha facility.

On July 24, 2001, the DNR issued an administrative order requiring ABC to submit, within fourteen days, all sanitary disposal project permit application documents or cease operation until ABC submits the requested documentation. The order also required ABC to pay a civil penalty of $5000. ABC appealed this order to the Commission pursuant to Iowa Code section 455B.308.

An administrative law judge from the Iowa Department of Inspections and Appeals conducted the hearing. Iowa Admin. Code r. 561–17.12(1). The administrative law judge entered her proposed decision affirming the portion of the order requiring ABC to obtain a permit for its Hiawatha facility but reversing the portion of the order that assessed the $5000 civil penalty. The Commission upheld the administrative law judge's proposed decision. The district court, on judicial review, affirmed the decision of the Commission. ABC appeals.

## II. Issues.

ABC raises several issues on appeal. They are: (1) whether the DNR has the statutory authority to require a sanitary disposal project permit for truck-to-trailer transfers; (2) whether ABC operates a transfer station; (3) whether the statutes governing the issuance of permits for sanitary disposal projects are unconstitutionally vague; and (4) whether the DNR is estopped from issuing an administrative order based on its past representations to ABC that no permit was required for its truck-to-trailer transfer operations.

## III. Standard of Review.

■ In reviewing the decision of the district court, we must apply the standards set forth in Iowa Code section 17A.19(10) and determine whether our application of those standards produce the same results as reached by the district court. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 589 (Iowa 2004). Section 17A.19(10) allows the district court to grant relief to a party seeking judicial review if the court determines that substantial rights of the person seeking judicial relief has been prejudiced by the agency action because the agency action meets any one of the several enumerated provisions in paragraphs *a* through *n*. Iowa Code § 17A.19(10). Neither party claims that if we find that one of the enumerated provisions of section 17A.19(10) has been met, that the agency's action does not affect the substantial rights of ABC. We will set out the applicable provisions of section 17A.19(10) as they relate to each issue.

## IV. Did the Commission Have the Statutory Authority to Require a Sanitary Disposal Project Permit for Truck–to–Trailer Transfers?

*Standard of Review.* The crux of the argument made by ABC on this issue is that the Commission in the agency proceeding erroneously interpreted section 455B.301(18) by finding a "sanitary dispos-

al project" to include transfer stations using transfer trailers. ABC's claim is covered by one of two of the enumerated provisions contained in Iowa Code section 17A.19(10). Paragraph c provides:

Based upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency.

Iowa Code § 17A.19(10)(c ). Paragraph l provides:

Based upon an irrational, illogical, or wholly unjustifiable interpretation of a provision of law whose interpretation has clearly been vested by a provision of law in the discretion of the agency.

Id. § 17A.19(10)(l ). To determine which provision is applicable to this appeal, we must determine whether the legislature clearly vested by a provision of law in the discretion of the Commission the interpretation of the term "sanitary disposal project." If the legislature vested this matter by a provision of law in the discretion of the Commission, paragraph l applies; otherwise, paragraph c supplies the standard of review.

The Iowa Code created the Commission as a part of the DNR. Id. § 455A.6. By statute, the legislature has given the Commission the authority to establish policy for the DNR and adopt rules necessary to provide for the effective administration of Iowa Code chapter 455B. Id. § 455A.6(6)(a ). The legislature has also given the Commission the power to establish rules for the proper administration of part I of division IV of Iowa Code chapter 455B

relating to the establishment and location of sanitary disposal projects, sanitary practices, inspection of sanitary disposal projects, collection of solid waste, disposal of solid waste, pollution controls, the issuance of permits, approved

methods of private disposition of solid waste, the general operation and maintenance of sanitary disposal projects, and the implementation of this part.

Id. § 455B.304(1). The legislation requiring a permit for the operation of a sanitary disposal project is contained in part I, division IV of chapter 455B. Id. § 455B.305(1). Because the legislature has clearly vested the interpretation of the provisions of the law dealing with the permitting of a sanitary disposal project in the discretion of the Commission, we can disturb the Commission's interpretation of the law based only upon an irrational, illogical or wholly unjustifiable interpretation of this provision of the law. Id. § 17A.19(10)(l ). Additionally, we are required to give deference to the view of the agency because the legislature vested in the discretion of the agency the permitting of a sanitary disposal project. Id. § 17A.19(11)(c ).

*Analysis.* Iowa Code section 455B.305 requires the director of the DNR to issue permits for the operation of a sanitary disposal project. Id. § 455B.305(1). The Iowa Code defines a sanitary disposal project as:

[a]ll facilities and appurtenances including all real and personal property connected with such facilities, which are acquired, purchased, constructed, reconstructed, equipped, improved, extended, maintained, or operated to facilitate the final disposition of solid waste without creating a significant hazard to the public health or safety, and which are approved by the executive director.

Id. § 455B.301(18). By rule, the Commission has defined a transfer station as "a fixed or mobile intermediate solid waste disposal facility for transferring loads of solid waste, with or without reduction of

volume, to another transportation unit." Iowa Admin. Code r. 567–100.2.

■ In interpreting a statute, our goal is to determine the legislature's intent when it enacted the statute. *State v. Tague,* 676 N.W.2d 197, 201 (Iowa 2004). "We do not speculate as to the probable legislative intent apart from the words used in the statute." *State v. Adams,* 554 N.W.2d 686, 689 (Iowa 1996); *accord State v. Welton,* 300 N.W.2d 157, 160 (Iowa 1981) (stating, "when a statute is plain and its meaning is clear, courts are not permitted to search for meaning beyond its expressed terms"). If the statute's language is clear and unambiguous, we apply a plain and rational meaning consistent with the subject matter of the statute. *City of Waukee v. City Dev. Bd.,* 590 N.W.2d 712, 717 (Iowa 1999). Finally, courts construe environmental statutes liberally. *State v. DeCoster,* 596 N.W.2d 898, 902 (Iowa 1999).

"All facilities and appurtenances . . . connected with such facilities . . . to facilitate the final disposition of solid waste" are sanitary disposal projects. Iowa Code § 455B.301(18). "Facilities," "appurtenances," or "facilitate" are not defined in part 1 of division IV of chapter 455B. ABC contends the court should use the definitions of "disposal" and "facilities" contained in sections 455B.482(1) and (2) to interpret section 455B.301(18). We disagree. The definitions in sections 455B.482(1) and (2) are to be used in interpreting part 9 of division IV of chapter 455B, not part 1 of division IV where section 455B.301(18) is found. *Id.* § 455B.482.

■ The plain meaning of a facility is "something that is built, constructed, installed, or established to perform some particular function." *Webster's Third New International Dictionary* 812–13 (unabr. ed.2002). "Appurtenances" are "accessory objects used in any function." *Id.* at 107. "Facilitate" means "to make easier or less difficult." *Id.* at 813. A transfer station is "a fixed or mobile intermediate solid waste disposal facility for transferring loads of solid waste, with or without reduction of volume, to another transportation unit." Iowa Admin. Code r. 567–100.2. Under the plain language of section 455B.301(18), a transfer station is built, constructed, installed, or established to make it easier to finally dispose of solid waste. The use of transfer trailers are accessory objects used in the function to make the final disposition of solid waste easier. The Commission was correct in interpreting a sanitary disposal project under section 455B.301(18) to include transfer stations that use transfer trailers.

## V. Does ABC Operate a Transfer Station?

■ *Standard of Review.* ABC claims the Commission erred in concluding its facility in Hiawatha is a transfer station. The legislature gave the Commission the discretion to conduct the appeal hearing. Iowa Code § 455B.308. We can grant ABC relief only if the determination of fact made by the commission "is not supported by substantial evidence in the record before the court when that record is viewed as a whole." *Id.* § 17A.19(10)(*f*). The agency's decision does not lack substantial evidence merely because the interpretation of the evidence is open to a fair difference of opinion. *Myers v. F.C.A. Servs., Inc.,* 592 N.W.2d 354, 356 (Iowa 1999). Section 17A.19(10)(*f*)(3) requires the adequacy of the evidence

to support a particular finding of fact must be judged in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the

record cited by any party that supports it. . . .

We can disturb the agency's application of law to fact only if the agency's application is irrational, illogical, or wholly unjustifiable because the application of law to fact has been clearly vested by a provision of law in the discretion of the agency. Iowa Code § 17A.19(10)(*m*).

■ *Analysis.* The record indicates that ABC transfers most of the solid waste collected by its route-collection trucks to the transfer trailers at the Hiawatha facility. Approximately forty tons of solid waste are transferred at the ABC Hiawatha facility each day. This amounts to more than ten thousand tons of solid waste in a year. This is more solid waste than is accepted by permit at some landfills located in the State of Iowa. During the transfer process, solid waste does fall to the ground and leachate drips from the route-collection truck and the transfer trailer. Although ABC immediately picks up the solid waste and puts it in the transfer trailer, ABC allows the leachate to accumulate in an underground tank. At the time of the DNR inspection, ABC informed the inspector that it empties the leachate tank twice a week depending on rainfall. At the hearing, ABC testified that it emptied the underground tank only twice last summer. There are no records indicating whether the tank is intact or if any of the leachate is being absorbed into the soil and entering the ground water.

The legislature has declared the goal of solid waste disposal in part 1 of division IV of chapter 455B to be "[t]he protection of the health, safety, and welfare of Iowans and the protection of the environment. . . ." Iowa Code § 455B.301A(1). The statutory charge given to the Commission by the legislature when the Commission adopted the rule defining transfer station was to "reflect and accommodate as far as is reasonably possible the current and generally accepted methods and techniques for treatment and disposition of solid waste. . . ." *Id.* § 455B.304(1).

Although the record indicated that persons normally think of transfer stations as sites where route-collection trucks dump their solid waste on the ground to be recollected and transferred into other vehicles for shipment to another site, the evidence also indicated that transfer stations do not always dump the solid waste on the ground. One example given at the hearing was where the route-collection trucks transferred the solid waste directly to compactors, rather than on the ground. There is no statutory authority requiring route-collection trucks at a transfer station to off-load their waste onto the ground.

Substantial evidence supports the finding ABC uses the Hiawatha facility to transfer loads of solid waste from one transportation unit to another. The evidence also supports a finding ABC uses fixed and mobile components to hold the solid waste at the Hiawatha facility for a period before ABC transports solid waste to its final destination. Applying these findings of fact to the rule defining a "transfer station," we conclude the Commission's application of law to fact was rational, logical, and wholly justifiable. ABC is required to obtain a sanitary disposal permit to operate its Hiawatha facility. Iowa Code § 455B.305(1).

## VI. Were the Statutes Governing the Issuance of Permits for Sanitary Disposal Projects Unconstitutionally Vague?

■ *Standard of Review.* Iowa Code section 17A.19(10)(*a*) allows us to grant relief from agency action if the action is "[u]nconstitutional on its face or as applied or is based upon a provision of the law that is unconstitutional on its face or

as applied." Iowa Code § 17A.19(10)(*a*). Under the doctrine of separation of powers, the judiciary is required to determine the constitutionality of legislation and rules enacted by the other branches of government. *Luse v. Wray,* 254 N.W.2d 324, 327 (Iowa 1977). We will not give any deference to the view of the agency with respect to the constitutionality of a statute or administrative rule, because it is exclusively up to the judiciary to determine the constitutionality of legislation and rules enacted by the other branches of the government. Iowa Code § 17A.19(11)(*b*). When a party raises constitutional issues in an agency proceeding, our review is de novo. *Rosen v. Bd. of Med. Exam'rs,* 539 N.W.2d 345, 348 (Iowa 1995).

■■■ *Analysis.* Under the Due Process Clause, a civil statute is unconstitutionally vague "when its language does not convey a sufficiently definite warning of the proscribed conduct." *Devault v. City of Council Bluffs,* 671 N.W.2d 448, 451 (Iowa 2003). The legal test for determining vagueness is: "[i]f the statute's meaning is fairly ascertainable by reliance on generally accepted and common meaning of words used, or by reference to the dictionary, related or similar statutes, the common law, or previous judicial constructions, due process is satisfied." *Knight v. Iowa Dist. Court,* 269 N.W.2d 430, 432 (Iowa 1978). There is a presumption of constitutionality and a litigant can only rebut this presumption by "negating every reasonable basis on which the statute can be sustained." *Devault,* 671 N.W.2d at 451. "Literal exactitude or precision is not required." *Id.* "A statute is not unconstitutionally vague merely because a key word has not been specifically defined." *Id.* To avoid a rule from unduly restricting the regulation of certain matters, a certain degree of indefiniteness is necessary.

*Fisher v. Iowa Bd. of Optometry Exam'rs,* 510 N.W.2d 873, 876 (Iowa 1994).

■■■ ABC argues section 455B.301(18), which defines a "sanitary disposal project," does not give sufficient notice to ABC that its Hiawatha facility is a sanitary disposal project subject to permitting; therefore, the statute is unconstitutionally vague. It argues every act of handling, transporting, compacting, sorting, moving, or dumping of solid waste facilitates the final disposition of solid waste. It contends the simple act of transferring solid waste from a wastebasket to a dumpster at an office building or the transfer of the solid waste from the dumpster to the route-collection truck facilitates the final disposition of solid waste, making the dumpster a sanitary disposal project under the statute. The district court upheld the statute as not being unconstitutionally vague by interpreting the statute to mean the facility must *substantially* facilitate the final disposition of solid waste. ABC contends the district court recognized the vagueness of the statute by implicitly adding the word "substantially" to clarify the definition of a solid waste disposal project and to avoid dumpsters from being solid waste disposal projects under the statute. ABC concludes its argument by contending that the district court impermissibly delegated to the DNR the power to determine when a facility is a sanitary disposal project on an ad hoc and subjective basis. The DNR argues otherwise.

It is not necessary to read the word "substantially" into the statute to cure its alleged vagueness. The statute is not vague as written. The statute defines "[a]ll facilities and appurtenances ... which are acquired, purchased, constructed, reconstructed, equipped, improved, extended, maintained, or operated to facilitate the final disposition of solid waste ..." as sanitary disposal projects. The

facility must not only "facilitate the final disposition of solid waste," but must also be "acquired, purchased, constructed, reconstructed, equipped, improved, extended, maintained, or operated" for that purpose. A dumpster located at an office building is not located at a facility "acquired, purchased, constructed, reconstructed, equipped, improved, extended, maintained, or operated to facilitate the final disposition of solid waste." The legislature has not given the DNR the authority to define sanitary disposal projects on an ad hoc or subjective basis. If the facility is acquired, purchased, constructed, reconstructed, equipped, improved, extended, maintained, or operated for the purpose to facilitate the final disposition of solid waste, it is a sanitary disposal project. This definition is not so uncertain that it fails to give fair notice to the public as to which facilities are sanitary disposal projects. ABC had fair notice its Hiawatha facility was a sanitary disposal project.

## VII. Is the DNR Estopped from Issuing an Administrative Order Based on its Past Representations to ABC that no Permit was Required for its Truck–To–Trailer Transfer Operations?

*Standard of Review.* The argument made by ABC on this issue is whether the Commission erroneously interpreted or applied the doctrine of equitable estoppel to the DNR's enforcement of Iowa Code section 455B.305, requiring ABC to obtain a permit for its Hiawatha facility. The principles governing our review of this issue are the same as those applied in division IV of this opinion.

■■■■ The doctrine of equitable estoppel is a common law doctrine preventing one party who has made certain representations from taking unfair advantage of another when the party making the repre-

sentations changes its position to the prejudice of the party who relied upon the representations. *Ahrendsen v. Iowa Dep't. of Human Servs.*, 613 N.W.2d 674, 678 (Iowa 2000). The legislature has not delegated any special authority or power to the agency to interpret or apply the common law doctrine of equitable estoppel. Thus, our review of the agency's action is for the correction of errors of law. Iowa Code § 17A.19(10)(*c*). We are also not required to give any deference to the agency's interpretation and application of the doctrine of equitable estoppel. *Id.* § 17A.19(11)(*b*). We are free to substitute our judgment de novo for the agency's interpretation and application of equitable estoppel. *Auen,* 679 N.W.2d at 590. Equitable estoppel must be proven by clear and convincing evidence. *Fencl v. City of Harpers Ferry,* 620 N.W.2d 808, 816 (Iowa 2000).

■■■■ *Analysis.* The elements of equitable estoppel are "(1) a false representation or concealment of material facts; (2) lack of knowledge of the true facts on the part of the actor; (3) the intention that it be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury." *City of Akron v. Akron–Westfield Cmty. Sch. Dist.,* 659 N.W.2d 223, 226 (Iowa 2003). ABC acknowledges that as a general rule, equitable estoppel cannot be invoked against the state. *Iowa Dep't of Transp. v. Nebraska–Iowa Supply Co.,* 272 N.W.2d 6, 14 (Iowa 1978).

ABC relies on *Nebraska–Iowa Supply Co.* to support the application of equitable estoppel in the present case. In *Nebraska–Iowa Supply Co.,* the Iowa Department of Transportation (DOT) brought an equitable action asking the court to order Nebraska–Iowa Supply Company to remove its billboards located near primary highways because it failed to file a timely permit application. 272 N.W.2d at 8–9.

Nebraska–Iowa Supply Company claimed it filed the applications late because the proper forms were not available at the DOT's office. *Id.* at 9. This court did not rely on the doctrine of equitable estoppel to find against the DOT but relied on the defense of unclean hands. *Id.* at · 14–15.

■■■■ We have consistently held equitable estoppel will not lie against a government agency except in exceptional circumstances. *Bailiff v. Adams County Conference Bd.,* 650 N.W.2d 621, 627 (Iowa 2002). A person seeking to invoke the doctrine of equitable estoppel against a government body "bears a heavy burden, particularly when the government acts in a sovereign or governmental role rather than a proprietary role." *Id.* In the present case, when the DNR initially advised ABC that the transfer trailers would not require a sanitary disposal project permit, the agency official was acting in good faith and within the ambit of his duties even though he made an erroneous interpretation of the law. The agency official was clearly acting in his governmental role in compliance with the statutory duties assigned to him. Under this set of facts, there are no exceptional circumstances that would justify an exception to the general rule that the doctrine of equitable estoppel cannot be used against government agencies. *See City of Lamoni v. Livingston,* 392 N.W.2d 506, 511–12 (Iowa 1986).

## VIII. Disposition.

Having concluded (1) the DNR had the statutory authority to require a sanitary disposal project permit for truck-to-trailer transfers; (2) ABC operates a transfer station; (3) the statutes governing the issuance of sanitary disposal project permits are not unconstitutionally vague; and (4) the DNR was not estopped from issuing its administrative order, we affirm the judgment of the district court.

**AFFIRMED.**