# IN THE SUPREME COURT OF IOWA

No. 73 / 05-2019

Filed August 10, 2007

**BIRCHANSKY REAL ESTATE, L.C., AND FOX EYE SURGERY, L.L.C.**,

Appellees,

vs.

**IOWA DEPARTMENT OF PUBLIC HEALTH, STATE HEALTH FACILITIES COUNCIL**,

Respondent,

**ST. LUKE'S HOSPITAL AND MERCY MEDICAL CENTER**,

Appellants.

_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

Two hospitals appeal the district court's determination a certificate of need was not required for an ophthalmologist's proposed outpatient surgical facility. **REVERSED.**

Michael A. Dee and Rebecca A. Brommel of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellant St. Luke's Hospital.

Edwin N. McIntosh and Heather L. Campbell of Dorsey & Whitney, LLP, Des Moines, for appellant Mercy Medical Center.

Douglas A. Fulton of Brick, Gentry, Bowers, Swartz, Stoltze & Levis, P.C., West Des Moines, for appellees.

Maureen Keehnle, Des Moines, for amicus curiae Iowa Hospital Association.

**STREIT, Justice.**

An ophthalmologist wants to open an outpatient surgical facility in Cedar Rapids. Iowa law requires the sponsor of such a facility to first obtain a certificate of need ("CON") from the Iowa Department of Public Health ("Department") before the facility can be developed unless a statutory exemption is applicable. Because we find the ophthalmologist's proposed facility required a CON, we reverse the decision of the district court. Moreover, the Department's decision to deny the ophthalmologist's CON application was reasonable.

### I.      Facts and Prior Proceedings.

This case centers on Dr. Lee Birchansky's efforts to establish an outpatient surgical facility[1] in Cedar Rapids. Under Iowa law, the Department must first issue a CON before an outpatient surgical facility can be developed. Iowa Code §§ 135.61(14)–(15), .63 (2005); *see Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 831–32 (Iowa 2002) (providing an overview of Iowa's CON law); Lauretta Higgins Wolfson, *State Regulation of Health Facility Planning: The Economic Theory and Political Realities of Certificates of Need*, 4 DePaul J. Health Care L. 261 (2001) (providing historical background for the enactment of CON laws across the country). Dr. Birchansky initially sought to obtain a CON for a proposed facility on H Avenue in 1996. The Department[2]

---

[1]An "outpatient surgical facility" is "a facility which as its primary function provides, through an organized medical staff and on an outpatient basis to patients who are generally ambulatory, surgical procedures not ordinarily performed in a private physician's office, but not requiring twenty-four hour hospitalization, and which is neither a part of a hospital nor the private office of a health care provider . . . ." Iowa Code § 135.61(21) (2005).

[2]The State Health Facilities Council, a division of the Iowa Department of Public Health, is charged with reviewing CON applications and deciding when a CON should be issued. Iowa Code § 135.62(2)(*d*). For simplicity, we will not distinguish the actions of the Council from the actions of the Department.

denied his application. Thereafter, in 1998, Dr. Birchansky, through Birchansky Real Estate, L.C., entered into a business arrangement with St. Luke's Hospital whereby the latter would create a surgery center at the H Avenue location and operate it as an off-campus department of the hospital. St. Luke's was not required to obtain a CON because the facility was considered an extension of St. Luke's hospital license. Under the arrangement, St. Luke's rented the H Avenue facility from Birchansky Real Estate for five years and provided the support staff and equipment. Dr. Birchansky was the medical director. Dr. Birchansky and his partner, Dr. Richard Stangler, who comprised Fox Eye Laser & Cosmetic Institute, P.C., performed the vast majority of surgeries at the facility. Four other doctors (three podiatrists and a hand surgeon) utilized the facility on occasion.

The initial lease agreement expired in 2003 and the parties were unable to agree to a new contract. Nevertheless, the facility remained in operation with St. Luke's occupying the space on a month-to-month basis.

Dr. Birchansky recognized the uncertainty of his arrangement with St. Luke's. He created Fox Eye Surgery, L.L.C. ("Fox Eye"). On August 24, 2004, Fox Eye submitted an application for a CON in the event the arrangement with St. Luke's ended. Fox Eye's application sought to obtain a CON for what it described as the "continued operation" of the facility. It noted it "will negotiate to purchase" from St. Luke's the equipment currently in place and employ any current staff not retained by St. Luke's.

The Department responded by sending Fox Eye a letter stating it had determined "the project proposed in the application *does not require*

a Certificate of Need to proceed." (Emphasis added.) The Department explained Fox Eye's proposal fell within one of the exemptions to the CON requirement. *See* Iowa Code § 135.63(2)(*o*). On November 19, 2004, the Department issued a memorandum to "All Affected and Interested Parties" regarding the Department's determination of non-reviewability.

St. Luke's disagreed with the Department's determination. On December 6, 2004, St. Luke's ceased operations at the facility and requested the removal of the H Avenue location from its hospital license. In its letter to the Department of Inspections and Appeals, St. Luke's stated "[a]ll equipment and personnel at this site will be relocated to St. Luke's main location at 1026 A Avenue NE at the close of business on December 6." At a hearing before the Department, St. Luke's admitted it pulled out of the H Avenue facility in order "to create a break in service" and cause the Department to reconsider its decision not to require Fox Eye to obtain a CON.

St. Luke's plan worked. Two days later, the Department informed Fox Eye its CON application was reviewable. The Department reasoned the exemption for a CON was no longer applicable because St. Luke's had ceased to provide services at the H Avenue facility and Fox Eye would not be performing surgeries at this location for at least forty-five days. On February 26, 2005, the Department denied Fox Eye's CON application, finding the additional surgery suites were not needed in the Cedar Rapids area.

Fox Eye and Birchansky Real Estate filed a petition for judicial review in the Polk County District Court. They argued (1) Fox Eye's application was non-reviewable under Iowa Code § 135.63(2)(*o*); and (2) if

the application was reviewable, the Department arbitrarily and unreasonably denied Fox Eye's CON application. St. Luke's and Mercy were allowed to intervene. The district court ruled the Department's "determination that the exemption found at Iowa Code § 135.63(2)(*o*) was no longer applicable under the circumstances of this proceeding was wholly unjustifiable." The district court reversed the Department's determination and remanded the matter to the Department "for such proceedings as may be required to complete the process started when it was initially determined that a certificate of need was not necessary." St Luke's and Mercy appeal.[3] They argue Fox Eye's proposal required a CON and contend the Department properly denied Fox Eye's application.

## II.    Scope of Review.

We review the district court's decision for errors at law. Iowa R. App. P. 6.4. The Iowa Administrative Procedure Act provides specific judicial review provisions for appeals concerning agency action. *See* Iowa Code § 17A.19. The Department is a government agency.

The first question we must address is whether the Department's interpretation of the statute at issue, Iowa Code § 135.63(2)(*o*), is entitled to deference. The answer depends on whether the interpretation of the statute is "clearly . . . vested by a provision of law in the discretion of the agency." *Id.* § 17A.19(10)(*c*), (*l*). If the interpretation is so vested, then the court may reverse only upon a finding the agency's interpretation was "irrational, illogical, or wholly unjustifiable." *Id.* § 17A.19(10)(*l*). "If the legislature has not clearly vested the interpretation of the statute at issue with the agency, we are free to substitute our judgment de novo for the agency's interpretation and determine if the interpretation is

---

[3]Neither the Iowa Department of Public Health nor the State Health Facilities Council appealed.

erroneous." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 589–90 (Iowa 2004) (citing Iowa Code § 17A.19(10)(*c*)).

In order for an interpretation to be clearly vested with an agency, we " 'must have a firm conviction from reviewing the precise language of the statute, its context, the purpose of the statute, and the practical considerations involved, that the legislature actually intended (or would have intended had it thought about the question) to delegate to the agency interpretive power with the binding force of law over the elaboration of the provision in question.' " *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 509 (Iowa 2003) (quoting Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 63 (1998)). The Department was expressly created by the legislature to, among other things, make the final decision on all CON applications. Iowa Code § 135.62(2)(*d*). The Department is also statutorily mandated with the responsibility for adopting all rules "necessary to enable [the Department] to implement this division," including procedures and criteria for reviewing CON applications. *Id.* § 135.72(1); *see also id.* § 135.62(2)(*d*)(5). We have found similar statutory language sufficient to conclude the matter under consideration was vested in the discretion of the agency. *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d 596, 602 (Iowa 2004); *Auen*, 679 N.W.2d at 590; *City of Marion v. Dep't of Revenue & Fin.*, 643 N.W.2d 205, 207 (Iowa 2002). Thus, the district court correctly concluded the interpretation of the statutory exemption for a CON, Iowa Code § 135.63(2)(*o*), was clearly vested in the discretion of the Department. Consequently, we may only reverse the Department's

interpretation if we find it to be "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*l*).

Although we give weight to the Department's interpretation, the meaning of any statute is always a matter of law to be determined by the court. *City of Marion*, 643 N.W.2d at 206. The goal in interpreting a statute "is to determine the legislature's intent when it enacted the statute." *ABC Disposal Sys.*, 681 N.W.2d at 603 (citing *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)). "If the statute's language is clear and unambiguous, we apply a plain and rational meaning consistent with the subject matter of the statute." *Id.* (citing *City of Waukee v. City Dev. Bd.*, 590 N.W.2d 712, 717 (Iowa 1999)).

**III.  Merits.**

**A.  Whether Fox Eye's Proposal Required a CON.**

The crux of this case concerns the Department's interpretation of Iowa Code § 135.63(2)(*o*). This section provides a CON is not required in the event of a

> change in ownership, licensure, organizational structure, or designation of the type of institutional health facility [as long as] the health services offered by the successor institutional health facility are unchanged.

When Fox Eye applied for a CON in 2004, the Department initially determined a CON was not required under section 135.63(2)(*o*). However, after St. Luke's pulled out of the facility, the Department notified Fox Eye a CON was necessary. The Department reasoned:

> In construing section 135.63(2)"o" in the past, the Department has approved this exemption only in those circumstances in which the change in the designation of type of institutional health facility (from hospital to outpatient surgical facility) was a *seamless change in which the cessation of hospital outpatient surgical services occurred simultaneously with the offering of the surgical services by the*

> *outpatient surgical facility.* In this situation, . . . the hospital has removed this location from its license and is no longer offering these services in this setting. In addition, the providers of these outpatient surgical services are not currently, and will not in the immediate future, be in a position to offer these services at this location [due to the need to purchase equipment and hire support staff]. Hence there will clearly be a *significant gap in time during which no outpatient surgical services will be offered by Fox Eye* . . . at this location. For this reason, the Department has determined that the exemption previously cited is no longer applicable.

(Emphasis added.)

The district court found the Department's interpretation of section 135.63(2)(*o*) "wholly unjustifiable" because "the [temporal] gap in services relied upon by the agency is not a factor to be considered under the exemption at issue and the defined terms found therein." We agree. Although the statute may contemplate a seamless transition or change in ownership, it does not expressly state or imply any temporal aspect to the change in ownership. The Department may not, under the guise of interpretation, add lack of "a significant gap in time" between services to the requirements for the exemption.[4]

Nevertheless, we find Fox Eye's proposal required a CON for a different reason: there was no "change in ownership, licensure, organizational structure, or designation of the type of institutional health facility." Iowa Code § 135.63(2)(*o*). Instead, St. Luke's simply moved its

---

[4]We note our ruling is largely confined to this case because during the pendency of this appeal the legislature amended section 135.63(2)(*o*) by adding the following language:

> This exclusion is applicable only if the institutional health facility consents to the change in ownership, licensure, organizational structure, or designation of the type of institutional health facility and ceases offering the health services simultaneously with the initiation of the offering of health services by the successor institutional health facility.

2006 Iowa Acts ch. 1184, § 78.

surgery center back to the hospital's main campus. It maintained the ownership, licensure, organizational structure, and designation of the type of facility. The only thing that changed was the facility's location. The exemption with its use of the term "successor" contemplates a transfer of operations between parties. *See id.* § 135.63(2)(*o*); Black's Law Dictionary 1473 (8th ed. 2004) (defining successor as "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation"). Nothing was transferred here. As St. Luke's employee and landlord, Dr. Birchansky did not gain the right to operate a *similar* surgery center at the H Avenue location without obtaining a CON. *See Catonville Nursing Home, Inc. v. Loveman*, 709 A.2d 749 (Md. Ct. App. 1998).

The Department's confusion on whether a CON was required may have stemmed from the application itself. Fox Eye's application implied the facility was going to be transferred from St. Luke's to Fox Eye. The application indicated Fox Eye *planned* to purchase St. Luke's equipment and *planned* to hire any of the support staff St. Luke's did not retain. Neither proposal occurred. After St. Luke's informed the Department it had no intention of transferring its H Avenue operations to Fox Eye, the Department ruled a CON was required based on the temporal gap in services. It never specifically addressed whether it believed Fox Eye's proposal still constituted a "change in ownership, licensure, organizational structure, or designation of the type of institutional health facility." We find it does not. Thus, a CON was required.

**B.** **Whether the Department's Decision to Deny Fox Eye's CON Application was Unreasonable.**

Alternatively, Fox Eye argues the Department's decision to deny Fox Eye's CON application was unreasonable. On review, we will reverse the Department's decision to deny a CON only if the decision was "unreasonable, arbitrary, capricious, or an abuse of discretion." Iowa Code § 17A.19(10)(*n*); *Greenwood Manor*, 641 N.W.2d at 831.

Iowa Code section 135.64(1) provides a list of eighteen factors the Department shall consider when reviewing a CON application. Additionally, the Department shall grant a CON for a new or changed institutional health service *only* if it finds:

> a. Less costly, more efficient, or more appropriate alternatives to the proposed institutional health service are not available and the development of such alternatives is not practicable;
>
> b. Any existing facilities providing institutional health services similar to those proposed are being used in an appropriate and efficient manner;
>
> c. In the case of new construction, alternatives including but not limited to modernization or sharing arrangements have been considered and have been implemented to the maximum extent practicable;
>
> d. Patients will experience serious problems in obtaining care of the type which will be furnished by the proposed new institutional health service or changed institutional health service, in the absence of that proposed new service.

Iowa Code § 135.64(2). The Department found none of these four criteria existed in the Cedar Rapids area. It concluded two local hospitals and an existing surgery center (Surgery Center of Cedar Rapids) had sufficient operating room capacity to accommodate the procedures that had been performed at the H Avenue location for the past six years. Specifically, it found patients would not be affected by a denial of Fox Eye's CON application because the Surgery Center of Cedar Rapids

provided a similar atmosphere to Fox Eye's proposed facility at similar costs.

Fox Eye does not dispute these findings. Instead, Fox Eye argues the Department should not have based its decision in part on the existence of the Surgery Center of Cedar Rapids because that facility came into existence *after* St. Luke's opened its surgery center on H Avenue. Even more offputting to Fox Eye is the fact the Surgery Center of Cedar Rapids was a joint venture between St. Luke's and approximately eighty medical practitioners. It did not require a CON. Fox Eye argues St. Luke's should not be able to block competitors by "artificially munipulat[ing] the market." While we understand Fox Eye's frustration, there is nothing unlawful about St. Luke's participating in the Surgery Center of Cedar Rapids. Based on the aforementioned criteria, the Department acted reasonably when it denied Fox Eye's CON application.

## IV.    Conclusion.

We agree with the district court the exemption for a CON does not require a successor entity to offer services concurrently with its predecessor. Nevertheless, we find the exemption was not applicable to Fox Eye's proposal because there was no "change in ownership" of the facility. Rather, St. Luke's simply moved its surgery center back to the hospital's main campus. Consequently, Iowa law required Fox Eye to obtain a CON for its proposed outpatient surgical facility and the Department did not act unreasonably in denying Fox Eye's application.

**REVERSED.**

All justices concur except Ternus, C.J., who takes no part.