# IN THE SUPREME COURT OF IOWA

No. 142 / 05-0740

Filed February 16, 2007

**INSITUFORM TECHNOLOGIES, INC.,**

Appellant,

vs.

**EMPLOYMENT APPEAL BOARD, a Unit of the Department of Inspections and Appeals, and LABOR COMMISSIONER,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

The employer, employment appeal board, and labor commissioner appeal from a district court ruling on a petition for judicial review. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Mark A. Lies II and James L. Curtis of Seyfarth Shaw, LLP, Chicago, Illinois, and Joan M. Fletcher of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellant.

Rick Autry, Des Moines, and Gail Sheridan-Lucht, Des Moines, for appellees.

**WIGGINS, Justice.**

The sewer-relining accident causing the Iowa occupational safety and health (IOSH) bureau to cite Insituform Technologies, Inc. for nine serious violations and eleven willful violations of the IOSH standards is the same accident described in *City of Des Moines v. Employment Appeal Board*, 722 N.W.2d 183, 187-88 (Iowa 2006). As a result of that accident, two people died and five people were seriously injured. The IOSH bureau proposed $38,250 in penalties for the nine serious violations and $770,000 in penalties for the eleven willful violations for a total of $808,250 in penalties.

Insituform filed a notice of contest to the citation and the matter was transferred to the employment appeal board (Board). The Board assigned the matter to an administrative law judge (ALJ) for a hearing. The ALJ applied the general industry permit-required confined spaces standards, as found in 29 C.F.R. section 1910.146. He affirmed most of the penalties, but modified, dismissed, and combined some of the others. The ALJ reduced the penalties from $808,250 to $158,000.

Insituform appealed the decision of the ALJ to the Board. The Board adopted the ALJ's findings of fact and the ALJ's determination that the general industry permit-required confined spaces standards rather than the construction employment standards applied to the work done by Insituform. The Board disagreed with the ALJ's dismissal of some violations and his reduction of the penalties. The Board reinstated all but one of the serious violations and all but one of the willful violations and assessed a total penalty of $733,750.

Insituform filed a petition for judicial review. The district court affirmed the Board's decision applying the general industry permit-required confined spaces standards rather than the construction employment

standards. However, the district court reinstated the ALJ's assessment and grouping of the violations and penalties. The total penalty assessed against Insituform by the district court was $158,000.

Insituform, the Board, and the commissioner appealed the decision of the district court. We transferred the case to the court of appeals. Relying on its decision in *City of Des Moines v. Employment Appeal Board*, No. 04-1763, 2006 WL 127955, at *4-*5 (Iowa Ct. App. Jan. 19, 2006), the court of appeals held the general industry permit-required confined spaces standards were not applicable. The court of appeals then dismissed all but two of the serious violations and all of the willful violations because the commissioner based these violations on the general industry permit-required confined spaces standards. The court of appeals affirmed the district court's combination of the penalties for the remaining serious violations reducing the total penalty to $4500.

The Board and the commissioner sought further review, which we granted.

### I. Issues.

There are four issues on appeal: (1) whether the Board erred in applying the general industry permit-required confined spaces standards to the work done by Insituform; (2) whether the application of these standards is constitutional; (3) whether substantial evidence supports the Board's determination that Insituform violated the standards; and (4) whether the district court erred in combining the civil penalties assessed by the Board.

### II. Scope of Review.

The Iowa Administrative Procedure Act governs a district court's review of administrative action. *IBP, Inc. v. Harpole*, 621 N.W.2d 410, 414 (Iowa 2001) (citing Iowa Code § 17A.19(8)). When reviewing the decision of

the district court's judicial review ruling, we determine if we would reach the same result as the district court in our application of the Iowa Administrative Procedure Act. *City of Des Moines*, 722 N.W.2d at 189-90. If a decision of the agency is incorrect under a ground specified in the Act, and a party's substantial rights have been prejudiced, the district court may reverse or modify an agency's decision. Iowa Code § 17A.19(10) (2001). As we discuss each issue raised on appeal, we will note the applicable scope of review.

### III. Analysis.

*A. Whether the Board erred in applying the general industry permit-required confined spaces standards to the work done by Insituform.* Because the legislature gave the labor commissioner the authority to interpret the IOSH standards, we will only reverse the agency's interpretation of its standards if it is "irrational, illogical, or wholly unjustified." *City of Des Moines*, 722 N.W.2d at 193-94 (citing Iowa Code §§ 17A.19(10)(*l*), (11)(*c*)).

In *City of Des Moines*, we agreed with the Board's interpretation that in order to determine whether the general industry permit-required confined spaces standards or the construction employment standards apply, the Board must determine, on a case-by-case basis, whether the task being performed is maintenance or repair.[1] *Id.* at 194. If the Board determines the task is maintenance, then the general industry permit-required confined spaces standards apply. *Id.* If the Board determines the task is repair, then the construction employment standards apply. *Id.* We also stated, "[i]f the question is close as to whether the work constitutes repair or maintenance, the agency should apply the standards that provide more protection to the

---

[1]The general industry permit-required confined spaces standards are contained in 29 C.F.R. section 1910.146, as incorporated into Iowa law by Iowa Administrative Code rule 875—10.20. The construction employment standards are contained in 29 C.F.R. part 1926, as incorporated into Iowa law by Iowa Administrative Code rule 875—26.1.

employees, depending on the hazard." *Id.* In the present case, the ALJ found the general industry permit-required confined spaces standards applied to the sewer-relining project, and interpreted these standards using the same analysis as we did in *City of Des Moines.* The Board adopted these findings as its own. Because the ALJ, and hence the Board, employed the proper analysis to interpret the applicable standards, the Board's interpretation was not irrational, illogical, or wholly unjustifiable. Accordingly, we will not reverse the Board's interpretation.

As a case-by-case analysis of the facts is necessary to determine whether the work being performed is maintenance or repair, it is necessary for us to determine if substantial evidence supports the Board's analysis and finding that the work done in the sewer was maintenance. If substantial evidence supports the Board's findings, these findings are binding on us. *United Fire & Cas. Co. v. St. Paul Fire & Marine Ins. Co.,* 677 N.W.2d 755, 759 (Iowa 2004).

In *City of Des Moines*, we held substantial evidence supported the Board's decision that the work done by Insituform on the sewer project was maintenance; therefore, the general industry permit-required confined spaces standards were applicable to that work. *City of Des Moines,* 722 N.W.2d at 194-95. The record in this case contains substantially the same evidence as was introduced in *City of Des Moines.* Consequently, for the reasons stated in *City of Des Moines*, we find substantial evidence exists in this record to affirm the Board's decision that the work done by Insituform on the sewer project is governed by the IOSH general industry permit-required confined spaces standards.

B. *Whether the application of the general industry permit-required confined spaces standards is constitutional.* When a party raises a

constitutional issue in an appeal of agency action, our review is de novo. *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d 596, 605 (Iowa 2004). Thus, we apply a de novo review to Insituform's claim that the Board's application of the general industry permit-required confined spaces standards is unconstitutional.

Insituform claims the commissioner failed to provide fair warning and "*prior* clear regulatory guidance to Insituform and others" indicating when an employer is subject to the specific requirements of the general industry permit-required confined spaces standards. Insituform states because of this lack of fair warning and the vagueness contained in the standards, the commissioner's application of the general industry permit-required confined spaces standards to Insituform violates the Due Process Clause of both the United States Constitution and the Iowa constitution.

Due process requires that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9; U.S. Const. amends. V, XIV, § 1. Both the federal and state Due Process Clauses prohibit vague statutes. *State v. Todd*, 468 N.W.2d 462, 465 (Iowa 1991). A civil statute is unconstitutionally vague when the language of the statute fails to convey a definite warning of the proscribed conduct. *ABC Disposal Sys., Inc.,* 681 N.W.2d at 605. A statute is not unconstitutionally vague if its meaning can be ascertained by reference to "generally accepted and common meaning of words used, or by reference to the dictionary, related or similar statutes, the common law, or previous judicial constructions." *Id.* "To avoid a rule from unduly restricting the regulation of certain matters, a certain degree of indefiniteness is necessary." *Id.* Finally, "[t]here is a presumption of constitutionality and a litigant can only rebut this

presumption by 'negating every reasonable basis on which the statute can be sustained.' " *Id.* (citation omitted).

Insituform argues it was unable to identify with " 'ascertainable certainty' that the Commissioner expected it to conform to the more detailed requirements of the general industry confined spaces standards." The commissioner argues, as this court found in *City of Des Moines*, Insituform was not engaged in the construction of new sewers, but rather was participating in a sewer-relining project. Therefore, our court concluded Insituform was doing maintenance work.

As we discussed in *City of Des Moines*, a 1995 OSHA instruction and a 1996 standard interpretation specifically explained sewer relining is covered by the general industry permit-required confined spaces standards. *See City of Des Moines*, 722 N.W.2d at 190-92. The instruction and standard interpretation gave Insituform fair warning of the applicability of the general industry permit-required confined spaces standards to sewer-relining projects.

There is additional evidence in the record supporting that Insituform had fair warning and was on notice the general industry permit-required confined spaces standards applied to the sewer-relining project. First, Insituform used the general industry permit-required confined spaces standards to formulate its safety manual policies. Second, the J.J. Keller employee handbook used by Insituform to train its employees specifically lists "sewers" as an example of a confined space. *See Ohio Cast Prod., Inc. v. Occupational Safety & Health Review Comm'n*, 246 F.3d 791, 798-99 (6th Cir. 2001) (finding industry practice is significant in determining whether a fair warning was given to an employer). Third, Insituform's safety handbook specifically lists 29 C.F.R. section 1910.146 and appendices A, B, and C to

29 C.F.R. section 1910.146 as guidance documents. Appendix C lists "sewer entry" as an example of a permit-required confined space. 29 C.F.R. § 1910.146 app. C. As the area safety manager for Insituform, Herbert Young, testified 29 C.F.R. section 1910.146 "addresses the best practice for entering sewers." Fourth, the City of Des Moines described the project as a sewer-relining project in its notice to bidders and notice of public hearing. Fifth, while at the site, Insituform employees filled out "confined space entry permits" attempting conformity with 29 C.F.R. section 1910.146(e)(1). Sixth, after the fatal accident, Insituform issued seven written warnings to its employees who were on site that day for violation of Insituform's "confined space entry policy," which was formulated by Insituform under 29 C.F.R. section 1910.146.

Finally, Insituform argues because the district court in *City of Des Moines* found the general industry permit-required confined spaces standards *did not* apply to the sewer project while the district court in this case found the general industry permit-required confined spaces standards *did* apply, the application of these standards is unconstitutionally vague. We disagree. Merely because two different officials applying the same factors reach a different interpretation of a statute does not render that statute unconstitutionally vague. *See State v. Holway*, 644 N.W.2d 624, 629 (S.D. 2002) (stating "[a] law is not rendered unconstitutionally vague merely because the decision of one official applying the factors is different from that of another official applying those same factors").

Accordingly, Insituform's claim that the commissioner failed to provide fair warning and "*prior* clear regulatory guidance to Insituform and others" indicating when an employer is subject to the specific requirement of the general industry permit-required confined spaces standards is

unfounded. Therefore, the Board's application of these standards to Insituform's sewer-relining project is constitutional.

*C. Whether substantial evidence supports the Board's decision as to Insituform's violation of the standards.* If our review of the record reveals substantial evidence supports the Board's findings as to the violations, the findings are binding on us. *United Fire & Cas. Co.,* 677 N.W.2d at 759. "[This court's] inquiry is whether the evidence supports the findings made by the agency, not whether the evidence may support a different finding." *City of Des Moines*, 722 N.W.2d at 195.

The Iowa Code authorizes the commissioner to adopt and promulgate occupational safety and health standards that the United States secretary of labor adopted and promulgated as permanent standards. Iowa Code § 88.5(1)(*a*). Pursuant to this authority, the commissioner adopted the federal respiratory protection standards found at 29 C.F.R. section 1910.134 and the federal permit-required confined spaces standards found at 29 C.F.R. section 1910.146. *See* Iowa Admin. Code rs. 875—26.1, 10.20. Accordingly, all citations issued by the IOSH bureau to Insituform are for violations of the federal OSHA standards.

*1. Does substantial evidence support the violation of the standards as found by the Board in citation one?* In citation one, the commissioner alleged Insituform committed nine serious violations. The Board found Insituform only committed eight serious violations. If substantial evidence supports a violation of the standard, we will then determine if substantial evidence supports the Board's determination that the violations were serious violations as defined under the Code.

*a. Citation one, item one.* The Board found Insituform committed a serious violation by not establishing and implementing worksite-specific

written standard operating procedures governing the selection and use of respirators, violating 29 C.F.R. section 1910.134(c)(1). The standard states:

> (c) This paragraph requires the employer to develop and implement a written respiratory protection program with required worksite-specific procedures and elements for required respirator use. The program must be administered by a suitably trained program administrator. In addition, certain program elements may be required for voluntary use to prevent potential hazards associated with the use of the respirator.
>
> (1) In any workplace where respirators are necessary to protect the health of the employee or whenever respirators are required by the employer, the employer shall establish and implement a written respiratory protection program with worksite-specific procedures. The program shall be updated as necessary to reflect those changes in workplace conditions that affect respirator use. The employer shall include in the program the following provisions of this section, as applicable:
>
> (i) Procedures for selecting respirators for use in the workplace;
>
> (ii) Medical evaluations of employees required to use respirators;
>
> (iii) Fit testing procedures for tight-fitting respirators;
>
> (iv) Procedures for proper use of respirators in routine and reasonably foreseeable emergency situations;
>
> (v) Procedures and schedules for cleaning, disinfecting, storing, inspecting, repairing, discarding, and otherwise maintaining respirators;
>
> (vi) Procedures to ensure adequate air quality, quantity, and flow of breathing air for atmosphere-supplying respirators;
>
> (vii) Training of employees in the respiratory hazards to which they are potentially exposed during routine and emergency situations;
>
> (viii) Training of employees in the proper use of respirators, including putting on and removing them, any limitations on their use, and their maintenance; and
>
> (ix) Procedures for regularly evaluating the effectiveness of the program.

29 C.F.R. § 1910.134(c)(1). Substantial evidence supports the Board's finding that Insituform violated this standard.

Chapter ten of Insituform's safety manual contained a written program that governed the selection and use of respirators. Insituform wrote its respiratory protection program in accordance with 29 C.F.R. section 1910.134. However, Insituform did not implement this plan. James Johnson, a laborer for Insituform, testified workers never used respirators on the job site. When he was asked to explain his answer, he testified, "just never." John Walkenhorst, also a laborer for Insituform, testified on the day of the accident no one was wearing a respirator. Further, Bill Bull, the crew leader, testified he was not familiar with Insituform's safety manual and the manual was not a part of any Insituform safety training.

*b. Citation one, item three.* The Board found Insituform committed a serious violation by failing to fit test atmosphere-supplying respirators and tight-fitting powered air-purifying respirators by performing quantitative or qualitative fit-testing in the negative pressure mode, violating 29 C.F.R. section 1910.134(f)(8).

After the accident, Bull entered the sewer to remove the sewer plug while wearing a respirator he was not fit-tested for or trained to wear. Bull entered the sewer at the request of the Des Moines fire department in what was an emergency situation. According to Bull, if he did not release the plug in the sewer, the job site could not be shut down.

The standard specifically states:

(f) This paragraph requires that, before an employee may be required to use any respirator with a negative or positive pressure tight-fitting facepiece, the employee must be fit tested with the same make, model, style, and size of respirator that will be used.

. . .

(8)  Fit testing of tight-fitting atmosphere-supplying respirators and tight-fitting powered air-purifying respirators shall be accomplished by performing quantitative or qualitative fit testing in the negative pressure mode, regardless of the mode of operation (negative or positive pressure) that is used for respiratory protection.

29 C.F.R. § 1910.134(f)(8).

There is no exception in the standard for emergency entry into a permit-required confined space.  Factually, a properly-fitted respirator is probably more important in an emergency to protect the rescuer from the same danger encountered by the victim being rescued.  Therefore, substantial evidence supports the Board's finding that Insituform violated 29 C.F.R. section 1910.134(f)(8).

*c. Citation one, item four.*  The Board found Insituform committed a serious violation by not informing exposed employees of the existence and location of and the danger posed by the permit-required confined space by posting danger signs or by any other equally effective means of notification, violating 29 C.F.R. section 1910.146(c)(2).  The standard states:

(c)  General requirements.

. . .

(2)  If the workplace contains permit spaces, the employer shall inform exposed employees, by posting danger signs or by any other equally effective means, of the existence and location of and the danger posed by the permit spaces.

Note:  A  sign  reading  "DANGER--PERMIT-REQUIRED CONFINED SPACE, DO NOT ENTER" or using other similar language would satisfy the requirement for a sign.

29 C.F.R. § 1926.146(c)(2).  Substantial evidence supports the Board's finding that Insituform violated this standard.

Kent Broz, a foreman, testified he thought when the sewer was plugged there was no need to be concerned about air quality because there was no airflow from the sewer.  Johnson testified he thought the use of

blowers was enough to protect him from the dangerous environment. This type of thinking indicates the employees thought the sewer was not a permit-required confined space when the sewer was plugged.

Bull also testified it was not his job to ensure the safety of the employees on the job. He opined safety on the job was each worker's individual responsibility. Although there were signs posted on the job site stating "Danger Keep Out," there were no signs posted relating to warnings about the dangers of working in the permit-required confined space.

*d. Citation one, item five.* The Board found Insituform committed a serious violation by failing to obtain any available information from the City of Des Moines, its host employer, regarding permit space hazards and entry operations, violating 29 C.F.R. section 1910.146(c)(9)(i). The standard states:

> (c) General requirements.
>
> . . .
>
> (9) In addition to complying with the permit space requirements that apply to all employers, each contractor who is retained to perform permit space entry operations shall:
>
> (i) Obtain any available information regarding permit space hazards and entry operations from the host employer.

29 C.F.R. § 1910.146(c)(9)(i). The record contains substantial evidence to support the Board's finding that Insituform violated this standard.

The City of Des Moines had a safety program in place regarding permit space hazards and entry operations. No evidence was submitted showing Insituform obtained this information from the city before beginning work on the sewer project. According to the commissioner's expert, Verne Brown, there was no communication between the City of Des Moines and

Insituform regarding the city's permit-required confined spaces operating and safety procedures.

*e. Citation one, item six.* The Board found Insituform committed a serious violation by not informing its host employer, the City of Des Moines, of the permit-required confined spaces program it would follow and of any hazards confronted or created in the confined space through either a debriefing or during entry operation, violating 29 C.F.R. section 1910.146(c)(9)(iii). The standard states:

> (c) General requirements.
>
> . . .
>
> (9) In addition to complying with the permit space requirements that apply to all employers, each contractor who is retained to perform permit space entry operations shall:
>
> . . .
>
> (iii) Inform the host employer of the permit space program that the contractor will follow and of any hazards confronted or created in permit spaces, either through a debriefing or during the entry operation.

29 C.F.R. § 1910.146(c)(9)(iii). The record contains substantial evidence to support the Board's finding that Insituform violated this standard.

Insituform did not inform the City of Des Moines of its permit space program. Both Brown and Iowa department of labor investigator Kenneth Clausen were unable to find any evidence of communication between the City of Des Moines and Insituform on these matters. The importance of this communication is illustrated by the testimony of a Des Moines fire department captain, Larry VanBaale. VanBaale testified his department was never notified the sewer project was a permit-required confined space. VanBaale further testified if he had been aware the sewer project was a permit-required confined space he:

would immediately let [his] crew know that we had possible - - we had people working in confined space that we could be called to that day. We would go refresh ourselves on the SOPs and touch base on our proper quality - - proper entry techniques.

*f. Citation one, item seven.* The Board found Insituform committed a serious violation by allowing its employees to enter and work in the permit-required confined space before Insituform prepared an entry permit, violating 29 C.F.R. section 1910.146(e)(1). This standard states: "[b]efore entry is authorized, the employer shall document the completion of measures required by paragraph (d)(3) of this section by preparing an entry permit." 29 C.F.R. § 1910.146(e)(1). Substantial evidence supports the Board's finding that Insituform violated this standard.

During the three-month period Insituform worked on the sewer, its employees entered the sewer almost every day. However, confined space permits were only filled out sporadically. During the entire three-month period, only two entry permits can be accounted for and were entered into evidence. Walkenhorst testified he was never taught when to use the confined space entry permit. Johnson testified he knew that a confined space entry permit was required to enter the sewer, and although these permits were "technically" required every day, permits were only filled out sporadically. James Coffey, a laborer, similarly testified he knew of the permit system, but permits were rarely used. He testified he filled out one permit, even though he entered the sewer nearly every day.

*g. Citation one, item eight.* The Board found Insituform committed a serious violation because it did not provide its employees with training to adequately acquire the understanding, knowledge, and skills necessary for the safe performance of the duties of the permit-required confined spaces standards, violating 29 C.F.R. section 1910.146(g)(1). This standard states:

"[t]he employer shall provide training so that all employees whose work is regulated by this section acquire the understanding, knowledge, and skills necessary for the safe performance of the duties assigned under this section." 29 C.F.R. § 1910.146(g)(1). Substantial evidence supports the Board's finding that Insituform violated this standard.

Although Insituform provided its employees some training, Insituform squeezed a two- or three-day training session into one day. One worker testified, when trained on the air monitoring devices, he never actually saw the device, but was just provided an explanation on how to use it. The record also supports Bull did not recognize Insituform's safety manual. He further testified even though he was a crew leader, he felt it was not his job to ensure the safety of others. Additionally, Broz thought if a sewer was plugged there was no need to worry about the atmospheric conditions. Furthermore, the workers did not wear respirators, harnesses, or safety equipment other than work boots and possibly hard hats.

*h. Citation one, item nine.* The Board found Insituform committed a serious violation because Insituform employees were allowed to enter and work in the sewer access pit and sewer conduit without a chest or full-body harness with a retrieval line properly attached, violating 29 C.F.R. section 1910.146(k)(3)(i). This standard states:

(k) Rescue and emergency services.

. . .

(3) To facilitate non-entry rescue, retrieval systems or methods shall be used whenever an authorized entrant enters a permit space, unless the retrieval equipment would increase the overall risk of entry or would not contribute to the rescue of the entrant. Retrieval systems shall meet the following requirements.

(i) Each authorized entrant shall use a chest or full body harness, with a retrieval line attached at the center of the

entrant's back near shoulder level, above the entrant's head, or at another point which the employer can establish presents a profile small enough for the successful removal of the entrant. Wristlets may be used in lieu of the chest or full body harness if the employer can demonstrate that the use of a chest or full body harness is infeasible or creates a greater hazard and that the use of wristlets is the safest and most effective alternative.

29 C.F.R. § 1910.146(k)(3)(i). Substantial evidence supports the Board's finding that Insituform violated this standard.

The testimony of five Insituform employees confirms the employees did not wear harnesses at the job site. Further, VanBaale testified none of the men who had succumbed to the gases were wearing harnesses.

*2. Does substantial evidence support that the violations found by the Board and affirmed by this court in citation one are serious violations?* The Code defines a serious violation. Iowa Code § 88.14(11). It provides:

a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

*Id.*

The record confirms that entering a permit-required confined space, such as this sewer, is fraught with hazards. These hazards include toxic and flammable substances. Many of these hazardous substances are contained in the atmosphere and are not detectable by the human sense of smell. Additionally, non-toxic conditions in a confined space can be deadly. If fumes overcome a worker causing the worker to fall into a shallow puddle of water, the puddle may contain enough water to cause the worker to drown.

Considering the hazards a worker may face while in a permit-required confined space, together with the purpose of each standard, Insituform's violation of each standard in citation one creates a substantial probability that death or serious physical harm could result from the violation. Therefore, substantial evidence exists to affirm the Board's decision that the eight violations it found under citation one are serious violations.

*3. Does substantial evidence support the violation of the standards as found by the Board in citation two?* In citation two, the commissioner alleged Insituform committed eleven willful violations. The Board found Insituform only committed ten willful violations. As with our analysis of the serious violations, we will first determine whether substantial evidence supports a violation of the standard. If substantial evidence supports a violation of a standard, we will then determine if substantial evidence supports the Board's findings that the violations were willful violations under the Code.

*a. Citation two, item one.* The Board found Insituform committed a willful violation because Insituform did not implement the measures necessary to prevent unauthorized entry in a permit-required confined space, violating 29 C.F.R. section 1910.146(d)(1). This standard states: "[u]nder the permit space program required by paragraph (c)(4) of this section, the employer shall: (1) Implement the measures necessary to prevent unauthorized entry." 29 C.F.R. § 1910.146(d)(1). Substantial evidence supports the Board's finding that Insituform violated this standard.

According to Insituform's safety manual the on-site superintendent, foreman, and/or safety engineer are to control the unauthorized entry into a permit-required confined space. Unauthorized entry would include entering the space contrary to a written plan implemented under the provisions of

the permit-required confined spaces standards. *See* 29 C.F.R. § 1910.146(c)(4) (requiring the employer to "develop and implement a written permit space program that complies with this section").

The record does not contain any evidence to show the on-site superintendent, foreman, and/or safety engineer controlled entry into the sewer. Broz testified he did not know as the foreman it was his responsibility to test the sewer for potential hazards and make the determination whether to upgrade or downgrade the use of the personal protective equipment. Further, Broz testified he thought when the sewer work area was plugged there was no need for concern about air quality because there was no airflow from the sewer. Finally, the record reveals Broz received no training as a foreman. If the foreman did not know what to look for before authorizing entry into the sewer, he could not control the unauthorized entry into the sewer.

*b. Citation two, item two.* The Board found Insituform committed a willful violation by not adequately identifying and evaluating the hazards of the job before allowing its employees to enter the sewer, violating 29 C.F.R. section 1910.146(d)(2). This standard states: "[u]nder the permit space program required by paragraph (c)(4) of this section, the employer shall: . . . (2) Identify and evaluate the hazards of permit spaces before employees enter them." 29 C.F.R. § 1910.146(d)(2). Substantial evidence supports the Board's finding that Insituform violated this standard.

The record supports that Insituform did not perform air monitoring as required under this standard and by Insituform's safety manual. Unsafe atmospheric conditions are known hazards of sewer work. John Marich, Insituform's area vice president, testified when he went to retrieve the air monitor the day after the accident, the air monitor was not in use.

Additionally, the crew leader stated he did not "mess with air monitoring," that was for the crew to do. Insituform's safety manual requires air monitoring before entry into a permit-required confined space.

*c. Citation two, item three.* The Board found Insituform committed a willful violation by not implementing the means, procedures, and practices necessary for safe permit space entry operation when it did not ventilate the space to eliminate hazards and did not verify the conditions in the space were acceptable for entry, violating 29 C.F.R. section 1910.146(d)(3). This standard states:

> (d) Under the permit space program required by paragraph (c)(4) of this section, the employer shall:
>
> . . .
>
> (3) Develop and implement the means, procedures, and practices necessary for safe permit space entry operations, including, but not limited to, the following:
>
> (i) Specifying acceptable entry conditions;
>
> (ii) Providing each authorized entrant or that employee's authorized representative with the opportunity to observe any monitoring or testing of permit spaces;
>
> (iii) Isolating the permit space;
>
> (iv) Purging, inerting, flushing, or ventilating the permit space as necessary to eliminate or control atmospheric hazards;
>
> (v) Providing pedestrian, vehicle, or other barriers as necessary to protect entrants from external hazards; and
>
> (vi) Verifying that conditions in the permit space are acceptable for entry throughout the duration of an authorized entry.

29 C.F.R. § 1910.146(d)(3). Substantial evidence supports the Board's finding that Insituform violated this standard.

The record supports that on the day of the accident the sucker fan and blower were not used to ventilate the area. Johnson and Walkenhorst

testified on the day of the accident the jetter (a piece of ventilating machinery) also was not used. Bull testified on the day of the accident the air compressor would not start. No air monitoring was done on the day of the accident. On other workdays, air monitoring was done intermittently at best.

*d. Citation two, item four.* The Board found Insituform committed a willful violation because it failed to provide equipment to test and monitor the atmospheric conditions and ensure that its employees used these devices, violating 29 C.F.R. section 1910.146(d)(4)(i). This standard states:

> (d) Under the permit space program required by paragraph (c)(4) of this section, the employer shall:
>
> . . .
>
> (4) Provide the following equipment (specified in paragraphs (d)(4)(i) through (d)(4)(ix) of this section) at no cost to employees, maintain that equipment properly, and ensure that employees use that equipment properly:
>
> (i) Testing and monitoring equipment needed to comply with paragraph (d)(5) of this section.

29 C.F.R. § 1910.146(d)(4)(i). Substantial evidence supports the Board's finding that Insituform violated this standard.

Insituform employees worked in the permit-required confined space without the equipment necessary to monitor the atmospheric conditions. Employees testified they did not monitor the air every day. Although trained on air monitoring, a worker stated it "wasn't like [air monitoring was] demanded to be done every time." Coffey, Walkenhorst, and Broz all testified there was no air monitoring done on the day of the accident, and indicated on other workdays, air monitoring was done intermittently at best. VanBaale testified during the rescue he did not observe any air monitoring devices. Bull admitted on the day of the accident no air monitoring was

done.  Insituform's safety manual requires it to provide its employees with equipment to test and monitor the atmospheric conditions.

*e.  Citation two, item five.*  The Board found Insituform committed a willful violation because it failed to provide ventilating equipment needed to obtain acceptable entry conditions and ensure that its employees used the equipment, violating 29 C.F.R. section 1910.146(d)(4)(ii).  This standard states:

> (d)  Under the permit space program required by paragraph (c)(4) of this section, the employer shall:
>
> . . .
>
> (4)  Provide the following equipment (specified in paragraphs (d)(4)(i) through (d)(4)(ix) of this section) at no cost to employees, maintain that equipment properly, and ensure that employees use that equipment properly:
>
> . . .
>
> (ii)  Ventilating equipment needed to obtain acceptable entry conditions.

29 C.F.R. § 1910.146(d)(4)(ii).  Substantial evidence supports the Board's finding that Insituform violated this standard.

As previously mentioned, on the day of the accident neither the sucker fan, the blower, nor the jetter were used to ventilate the area.  Bull testified on the day of the accident the air compressor would not start.  Ensuring that its employees used the ventilating equipment needed to obtain acceptable entry conditions, as required by this standard, is also a procedure required by Insituform's safety manual.

*f.  Citation two, item six.*  The Board found Insituform committed a willful violation because it failed to provide personal protective equipment, such as air or self-contained breathing apparatus and ensure that its

employees used the equipment, violating 29 C.F.R. section 1910.146(d)(4)(iv). This standard states:

> (d) Under the permit space program required by paragraph (c)(4) of this section, the employer shall:
>
> . . .
>
> (4) Provide the following equipment (specified in paragraphs (d)(4)(i) through (d)(4)(ix) of this section) at no cost to employees, maintain that equipment properly, and ensure that employees use that equipment properly:
>
> . . .
>
> (iv) Personal protective equipment insofar as feasible engineering and work practice controls do not adequately protect employees.

29 C.F.R. § 1910.126(d)(4)(iv). Substantial evidence supports the Board's finding that Insituform violated this standard.

Five Insituform employees testified they were not wearing respirators on the day of the accident and many of those employees indicated they never wore respirators on the job site. The crew leader testified he did not believe it was his responsibility to ensure that his workers were wearing their respirators. Further, two workers on the site failed Insituform's tests on respirator usage. The record indicates either this was not communicated to the supervisors at the job site or if the job site supervisor inquired, he ignored the workers' failure of the respirator tests and allowed them to work regardless of the workers' failure.

*g. Citation two, item seven.* The Board found Insituform committed a willful violation because it failed to provide equipment, such as ladders, needed for safe ingress and egress by authorized entrants, violating 29 C.F.R. section 1910.146(d)(4)(vii). This standard states:

> (d) Under the permit space program required by paragraph (c)(4) of this section, the employer shall:

. . .

(4) Provide the following equipment (specified in paragraphs (d)(4)(i) through (d)(4)(ix) of this section) at no cost to employees, maintain that equipment properly, and ensure that employees use that equipment properly:

. . .

(vii) Equipment, such as ladders, needed for safe ingress and egress by authorized entrants.

29 C.F.R. § 1910.146(d)(4)(vii). Substantial evidence supports the Board's finding that Insituform violated this standard.

Johnson testified on the day of the accident he "leaped from the concrete platform into the water" of the sewer. Coffey testified the ladder leading to the sewer did not reach the ground and in order to reach the floor of the sewer a worker had to jump from the ladder. VanBaale described the distance from the ladder to the ground as between six and seven feet. Walkenhorst recalled in order to get back onto the ladder you "had to prop your hand up on the lid and just hoist yourself up." He recalled the distance between the sewer floor and the ladder, the distance a worker had to hoist himself up, as five feet. Another employee also testified the ladder did not reach the ground. Insituform's safety manual specifically required ladders or other needed equipment to allow for "ingress and/or egress."

*h. Citation two, item eight.* The Board found Insituform committed a willful violation by allowing employees to work in the sewer without continuously monitoring the atmosphere and performing pre-entry testing, violating 29 C.F.R. section 1910.146(d)(5)(i). This standard states:

(d) Under the permit space program required by paragraph (c)(4) of this section, the employer shall:

. . .

(5) Evaluate permit space conditions as follows when entry operations are conducted:

(i) Test conditions in the permit space to determine if acceptable entry conditions exist before entry is authorized to begin, except that, if isolation of the space is infeasible because the space is large or is part of a continuous system (such as a sewer), pre-entry testing shall be performed to the extent feasible before entry is authorized and, if entry is authorized, entry conditions shall be continuously monitored in the areas where authorized entrants are working.

29 C.F.R. § 1910.146(d)(5)(i). Substantial evidence supports the Board's finding that Insituform violated this standard.

As previously noted, Johnson and Coffey testified on the day of the accident there was no air monitor on site. The crew leader stated he did not "mess with air monitoring" because that was for the crew to do. Insituform workers regularly entered the sewer without air monitoring. Even the foreman had the misunderstanding that if the sewer was plugged, there was no need to worry about chemicals in the sewer air. Insituform's safety manual specifically requires air monitoring before entry into a confined space.

*i. Citation two, item ten.* The Board found Insituform committed a willful violation because it failed to identify and designate persons with proper training to perform safety monitoring, violating 29 C.F.R. section 1910.146(d)(8). This standard states:

(d) Under the permit space program required by paragraph (c)(4) of this section, the employer shall:

. . .

(8) Designate the persons who are to have active roles (as, for example, authorized entrants, attendants, entry supervisors, or persons who test or monitor the atmosphere in a permit space) in entry operations, identify the duties of each such employee, and provide each such employee with the training required by paragraph (g) of this section.

29 C.F.R. § 1910.146(d)(8). Substantial evidence supports the Board's finding that Insituform violated this standard.

Training provided to Insituform's supervisors and employees, regarding entry, testing and monitoring, ventilating, and standby rescue was not effective. A chain of command is provided by Insituform's safety manual. However, the workers at the sewer project did not follow or were not aware of this chain of command. As mentioned earlier, Bull could not even identify Insituform's safety manual. Additionally, Insituform never provided those in supervisory positions, such as Broz, training to know or understand their duties or the chain of command structure.

*j. Citation two, item eleven.* The Board found Insituform committed a willful violation because its employees were allowed to enter and work in the sewer without the protection provided by implementing a system for the preparation, issuance, use, and cancellation of the required entry permits, violating 29 C.F.R. section 1910.146(d)(10). This standard states:

> (d) Under the permit space program required by paragraph (c)(4) of this section, the employer shall:
>
> . . .
>
> (10) Develop and implement a system for the preparation, issuance, use, and cancellation of entry permits as required by this section.

29 C.F.R. § 1910.146(d)(10). Substantial evidence supports the Board's finding that Insituform violated this standard.

Insituform exposed its employees and supervisors to hazards that would have been identified by the implementation of an entry permit system. Even though Insituform employees entered the sewer almost every day, confined space permits were only used sporadically. During the three-month period Insituform employees worked on the sewer, only two entry permits can be accounted for and were entered into evidence. Walkenhorst testified he was never taught when to use the confined space entry permit.

Johnson testified he knew a confined space permit was required to enter the sewer, however, he only recalled permits being filled out sporadically. Coffey similarly testified he knew of the permit system, but the permits were rarely filled out. He recalls only filling out one permit, even though he entered the sewer nearly every day. Insituform's safety manual had procedures to implement a permit system to provide the necessary protection to employees who entered the sewer.

*4. Does substantial evidence support that the violations found by the Board and affirmed by this court in citation two are willful violations?* The Code does not contain a definition of a willful violation. However, in creating a civil penalty for a willful violation, the Code provides:

> Any employer who willfully or repeatedly violates the requirements of section 88.4, any standard, rule, or order adopted or issued pursuant to section 88.5, or rules adopted pursuant to this chapter, may be assessed a civil penalty of not more than seventy thousand dollars for each violation, but not less than five thousand dollars for each willful violation.

Iowa Code § 88.14(1). To determine what constitutes a willful violation, we must interpret section 88.14(1).

The interpretation of a statute is always a matter of law for this court. *City of Marion v. Iowa Dep't of Revenue & Fin.*, 643 N.W.2d 205, 206 (Iowa 2002). Nevertheless, we are required to give appropriate deference to the agency's interpretation in certain situations. Iowa Code § 17A.19(11). Although the legislature gave the labor commissioner the authority to promulgate Iowa's occupational safety and health standards under section 88.5, the legislature did not vest the interpretation of "willful" under the penalty provision with the commissioner or the Board. Accordingly, we apply a correction-of-errors-at-law standard of review in interpreting the statute. *Id.* § 17A.19(10)(*c*).

A willful violation is committed by an "employer who willfully . . . violates . . . any standard [or] rule . . . adopted or issued pursuant to section 88.5." *Id.* § 88.14(1). We have previously interpreted a willful violation "exists when the violation is committed with intentional disregard of, or plain indifference to, the requirements of the regulation." *IBP, Inc. v. Iowa Employment Appeal Bd.*, 604 N.W.2d 307, 321 (Iowa 1999). More than mere negligence on the part of the employer is required to support a willful violation. *Id.* The difference between a serious and willful violation of a workplace safety standard is analogous to the difference between negligence and recklessness in tort law. *Id.* Our interpretation is consistent with other courts interpreting the federal Occupational Safety and Health Act. *See Ensign-Bickford Co. v. Occupational Safety & Health Review Comm'n*, 717 F.2d 1419, 1422 (D.C. Cir. 1983) (stating "[a]lthough the Act does not define the term 'willful,' courts have unanimously held that a willful violation of the Act constitutes 'an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements' " (citation omitted)).

Insituform asks us to require actual knowledge of a violation and specific evidence of that knowledge in every case in order to prove willfulness. To do so would be inconsistent with our interpretation of willful. Our interpretation requires an intentional disregard *or* a plain indifference to the requirements of our IOSH standards. Under our interpretation, "a plain indifference" is an alternative to "intentional disregard." Furthermore, a plain indifference without direct evidence that the employer knew of each individual violation allows the finder of fact to infer willfulness from that evidence. *A.E. Staley Mfg. Co. v. Sec'y of Labor*,

295 F.3d 1341, 1350-51 (D.C. Cir. 2002). Accordingly, we will not require proof of knowledge to establish a violation was willful.

Applying our interpretation of the willful standard, we find substantial evidence supports a finding that Insituform's ten violations in citation two are willful violations. Insituform's safety manual contains an entire chapter on confined spaces. It specifically references work in sewers. The manual has detailed instructions on how to comply with the general industry permit-required confined spaces standards. The manual shows Insituform not only knew the permit-required confined spaces standards existed, but also that it knew of the standard's requirements.

In spite of this knowledge, Insituform consistently failed to comply with these standards throughout the entire time it worked on the sewer project. One of Insituform's on-site supervisors testified he never saw the safety manual. The evidence supports a finding that ventilation equipment, air monitors, personal protection equipment, and a proper ladder were not present or properly used throughout the time Insituform's employees were working on the sewer. Employees were consistently allowed to enter the sewer without first testing the atmospheric conditions in the sewer and without implementing a system for the preparation, issuance, use, and cancellation of the required entry permits. The ten violations the Board found to exist under citation two were not one-time violations due to inadvertence. The record demonstrates Insituform made no effort to comply with its safety manual and the ten standards it violated in citation two. This total indifference allows the Board to infer willfulness from the evidence. *Id.*

Therefore, we affirm the Board's decision finding that Insituform committed ten willful violations under citation two.

*D. Whether the district court erred in combining the civil penalties assessed by the Board.* In its order, the Board fined Insituform $4500 for each serious violation and $70,000 for each willful violation. The order assessed a total penalty of $733,750. The total penalty assessed in the order does not add up to the total amount of the individual fines assessed in the order. This discrepancy is due to the order stating the fine for the serious violation in citation one, item three is $4500, while the body of the opinion reinstates the penalty in the citation of $2250. For our purposes, we will assume the fine for the serious violation in citation one, item three is $2250.

On appeal to the district court, the court combined the penalties for separate violations and lowered the total penalty to $158,000. The district court combined the penalties on the theory that some of the separate violations were duplicate violations because each of the separate violations could be cured by a single act of abatement.

The Code provides for each willful violation the employer "may be assessed a civil penalty of not more than seventy thousand dollars for each violation, but not less than five thousand dollars." Iowa Code § 88.14(1). For serious violations, the Code provides an employer "shall be assessed a civil penalty up to seven thousand dollars for each such violation." *Id.* § 88.14(2). The legislature left the determination of the appropriate penalty for willful and serious violations to the Board. *Id* § 88.7(*a*). Accordingly, we will give appropriate deference to the Board's assessment of a penalty and reverse the Board's decision if it is based on an irrational, illogical, or wholly unjustifiable application of law to the facts. *Id.* §§ 17A.19(10)(*m*), (11)(*c*).

The penalty provisions of the federal Occupational Safety and Health Act for willful and serious violations contain the same language as the Iowa

penalty provisions. *Compare* 29 U.S.C. § 666(a), (b), *with* Iowa Code § 88.14(1), (2). An early case decided by the federal occupational safety and health review commission held when separate violations can be cured by a single abatement, only one penalty should be assessed for the violations. *Sec'y of Labor v. Stimson Contracting Co.*, 5 O.S.H. Cas. (BNA) 1176, 1178 (Mar. 28, 1977). A subsequent federal occupational safety and health review commission decision overruled *Stimson. Sec'y of Labor v. H.H. Hall Constr. Co.*, 10 O.S.H. Cas. (BNA) 1042, 1046 (Oct. 7, 1981). In overruling *Stimson* the commission stated:

> We have reconsidered *Stimson* and overrule it to the extent that it requires the Commission to vacate a citation or an item of a citation on the grounds that one violation is included within another cited violation. Although a worksite condition may violate more than one standard, section 5(a)(2) of the Act requires an employer to comply with all standards applicable to a hazardous condition even though the abatement requirements of two applicable standards *may* be satisfied by compliance with the more comprehensive standard. Thus, there is no unfair burden imposed on an employer when the same or closely related conditions are the subject of more than one citation item and a single action may bring an employer into compliance with the cited standards. However, the Commission has wide discretion in the assessment of penalties for distinct but potentially overlapping violations and it is appropriate to assess a single penalty for overlapping violations as the Commission has done in the past. Despite the fact that the violations alleged in this case, operation of heavy equipment near an excavation and improper support of trench walls, result in the same general hazard—collapse or cave-in— the conditions giving rise to the violations are separate and distinct. Accordingly, we conclude that Hall's simultaneous noncompliance with two standards is not necessarily duplicative.

*Id.* (internal citations omitted).

The federal courts have embraced this concept and recognized it is discretionary on the commission as to whether to group multiple violations and assess a single penalty. *Dakota Underground, Inc. v. Sec'y of Labor*, 200

F.3d 564, 569 (8th Cir. 2000). We agree with the federal courts that the Board has wide discretion in the assessment of penalties for distinct but potentially overlapping violations of the standards.

Under our standard of review, we cannot say the Board's failure to combine the penalties is an irrational, illogical, or wholly unjustifiable application of law to the facts. The record clearly establishes Insituform violated each standard as alleged by the commissioner. The Board has a right to assess a penalty for each violation to deter conduct, to protect the public from violations, and to punish the violator for its actions. Under these circumstances, we will not disturb the assessment of the civil penalties by the Board.

**IV. Disposition.**

Because the general industry permit-required confined spaces standards apply to the work being done by Insituform's employees, the application of these standards is constitutional, substantial evidence supports the Board's decision, and the Board's assessment of the civil penalties was not an irrational, illogical, or wholly unjustifiable application of law to the facts, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case to the district court to enter an order affirming the decision of the Board.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Hecht and Appel, JJ., who take no part.