**IN THE COURT OF APPEALS OF IOWA**

No. 21-1968
Filed July 20, 2022


**LINNHAVEN, INC., and ACCIDENT FUND NATIONAL INSURANCE COMPANY/UNITED HEARTLAND,**
    Plaintiffs-Appellants,

**vs.**

**ROGER BLASDELL, SURVIVING SPOUSE OF HEATHER BLASDELL,**
    Defendant-Appellee.
_____


Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.


An employer appeals from a district court ruling that reversed the decision

of the workers' compensation commissioner. **AFFIRMED.**


Laura Ostrander, Assistant General Counsel, Lansing, Michigan, for

appellants.

Thomas Wertz and Mindi M. Vervaecke of Wertz Law Firm, Cedar Rapids,

for appellee.


Heard by Bower, C.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Linnhaven, Inc. and its insurer, Accident Fund National Insurance Company/United Heartland (referred to together as Linnhaven), appeal from a district court ruling that reversed the decision of the workers' compensation commissioner. The district court found Roger Blasdell was not barred from receiving workers' compensation benefits for the death of his wife, Heather Blasdell, based on desertion without fault of Heather. The commissioner's decision was not supported by substantial evidence within the meaning of Iowa Code section 85.42(1)(a) (2017). We affirm the decision of the district court.

## I.    Background Facts & Proceedings

Roger and Heather were married in 2008. They lived together in Iowa with Heather's son, first in Ryan, and then in Delhi.[1] Heather lost her job in December 2010 and could not find another job in the area. In January 2011, Heather moved to Clinton. She took only her clothes and vehicle. She later moved to Cedar Rapids and obtained employment at Linnhaven. Heather's son remained living with Roger, and the two of them moved to Manchester. Roger listed himself as single on a W-4 form in 2011 and 2015. In 2011 and 2012, Roger filed his taxes as married filing separately.

On November 5, 2012, Heather sustained an injury while working at Linnhaven. Heather was deposed on January 21, 2014. She stated that she was separated from Roger and the reason they had not divorced was "money."

---

[1] Heather and Roger are also the parents of a daughter. For reasons not clear from the record, their daughter lived with the maternal grandmother.

Heather's marital status was not an issue in the workers' compensation proceedings.

A deputy workers' compensation commissioner determined Heather was permanently and totally disabled as a result of the work injury, noting "[a]s a result of the work injury to her right heel she sustained physical impairment coupled with a more severe psychological impairment, which has rendered her unable to work." She was awarded workers' compensation benefits for as long as she remained permanently and totally disabled. The deputy's decision was affirmed by the commissioner.[2]

On September 9, 2016, Heather died as a result of an overdose of prescription medication.[3] Roger filed a claim for death benefits as Heather's surviving spouse. He also sought reimbursement for Heather's burial expenses, which he had paid. Linnhaven asserted that Roger was not entitled to death benefits under section 85.42(1)(a), which provides that a surviving spouse is not entitled to death benefits "[w]hen it is shown that at the time of the injury the surviving spouse had willfully deserted deceased without fault of the deceased, then such survivor shall not be considered as dependent in any degree."[4]

In a deposition taken on April 3, 2018, Roger stated that at the time of the November 5, 2012 injury, Heather was the beneficiary of his life insurance policy, was listed as a driver on his car insurance, and was listed as an emergency contact

---

[2] The commissioner delegated the authority to issue the final agency decision to a deputy workers' compensation commissioner.

[3] The issue of whether Heather's death was intentional is not before our court in this appeal.

[4] Linnhaven also claimed Roger did not show Heather's death was caused by a work-related injury. That issue is not part of this appeal.

at his work. Roger asserted that Heather would stay in Manchester with him and her son from time to time. He and Heather did not have an intimate relationship. He stated they did not get divorced because "[w]e never fully wanted it." Roger continued to see Heather "[a]lmost weekly" and gave her money. They exchanged telephone calls and text messages.

Roger's former girlfriend, Angela, was also deposed on April 3. Angela stated that she was dating Roger at the time of Heather's injury on November 5, 2012, but she was not dating Roger at the time of the deposition. Angela and Roger cohabited for a time. Angela knew that Roger and Heather were married and that they continued to communicate.

A hearing was held on May 15, 2018. Roger's testimony was similar to his deposition testimony. He stated that he and Heather separated in January 2011 mainly for financial reasons. He stated that they maintained contact from the time they separated until Heather's death. Roger provided Heather weekly financial assistance. He testified Heather also helped him financially about five times per year.

Heather's son testified he was living with Heather in Cedar Rapids when she was injured in 2012. He stated:

> I know that [Roger and Heather] had frequent conversations throughout the week. I don't necessarily know about what they talked about, but I know that they were in contact with each other. And throughout—after her injury, I had been present a few different times when they had met up with each other.

Heather's son stated that sometimes Roger would meet Heather to give her money "to help out with bills," and sometimes it was just to "check up and see how everybody was doing."

Following the hearing, the deputy workers' compensation commissioner who presided over the hearing became unavailable. The workers' compensation commissioner authorized another deputy to issue a proposed decision. This deputy relied on the record and the post-hearing briefs. On August 6, 2019, the deputy found:

> Ultimately, regardless of whether Heather was Roger's beneficiary or emergency contact or whether they spoke regularly around the time of her work-related injury, I find that both Heather and Roger intended to terminate their marital relationship in early 2011—nearly two years before Heather's work-related injury. Heather moved out of the home she shared with Roger, and shortly thereafter Roger began a relationship with another woman—a relationship that continued for the next five years and included several years of cohabitation. Roger's relationship with [Angela] reflects his willful intention to separate from Heather. Further, Heather and Roger never lived together or had any sexual relationship after their separation in 2011. While they may have spoken regularly at the time of Heather's work-related injury, these exchanges were not romantic; they were to check up on one another and their children. For these reasons, I find Heather and Roger ended their marriage relationship in 2011 and that Roger willfully and intentionally separated from Heather at that time.
>
> I also find that the cessation of Heather and Roger's marriage relationship in 2011 came as a result of financial hardship; not due to any abhorrent behavior from Heather, such as alcoholism, drug use, or physical abuse.

The deputy also found, "[T]he period of time between Heather's work-related injury and her death reflects a continuation of the termination of the marital relationship between Heather and Roger."

The deputy concluded "Roger had willfully deserted Heather without fault by Heather as of 2011—before her underlying work-related injury." The deputy determined that based on the statutory language in section 85.42(1)(a), Roger was not entitled to death benefits.

Roger requested a rehearing because the deputy who presided over the hearing was not the author of the proposed decision. Roger claimed the demeanor of the witnesses was a substantial factor in the case. The commissioner ruled,[5] "in an effort to maintain the integrity of the contested case process before this agency, rehearing is granted in this matter."

A new hearing was held in July 2020 before the deputy who had issued the ruling in the case. No new exhibits were permitted, and only Roger testified. He testified it was Heather's decision to move to Clinton and she believed she could find employment there. Roger testified Heather could come and go from his home whenever she wanted. He stated he sometimes stayed with Heather in Cedar Rapids but did not live with her.

Following the rehearing, the deputy ruled:

> Ultimately, given Roger's consistent testimony throughout the entirety of the case, I find Roger's behavior and outward manner to be forthcoming and straightforward. At no point on rehearing was I given the impression that he was attempting to conceal information. I therefore find him to be a generally credible witness and I find his demeanor reflects positively on his case.

The deputy determined, however, that the findings on Roger's demeanor did not change the conclusion that Heather and Roger intended to terminate their marital relationship in early 2011, and this remained the case at the time of Heather's injury in 2012 and her death in 2016. The deputy again determined that Roger was not entitled to death benefits.

---

[5] A deputy issued this ruling on the authorization of the commissioner.

Roger appealed the deputy's decision to the workers' compensation commissioner.[6] The commissioner determined that under section 85.42(1)(a), the term "at the time of the injury" meant at the time of Heather's injury in November 2012. The commissioner found Roger willfully and intentionally separated from Heather before her injury. The commissioner also found this separation was without the fault of Heather. The commissioner concluded Roger was not dependent on Heather and determined he was not entitled to death benefits.

Roger petitioned for judicial review. The district court found that for Roger to collect death benefits, "at the time of injury, [Roger] must (1) be Heather's spouse and (2) not have deserted her." The court stated:

> Both parties and the [commissioner] seem to treat the questions of whether [Roger] and Heather were married at the time of injury and whether [Roger] abandoned Heather as one in the same. They are not. A person could abandon their spouse but they would still be married until a divorce decree was entered as there is no common law divorce. *In re Weems' Estate*, 139 N.W.2d 922, 924 (Iowa 1966). It is undisputed that [Roger] and Heather never received a divorce decree. Therefore, at the time of Heather's injury, she and [Roger] were still married.

The court also stated:

> To be clear, in order for this exception [in section 85.42(1)(a)] to apply, [Roger] had to have deserted Heather. If Heather deserted [Roger], [Roger] would still be eligible for survivor's benefits. Likewise, if neither party deserted one another, [Roger] is eligible for survivor's benefits. If both parties deserted the marriage, then it cannot be said Heather is without fault, so [Roger] would still collect. Therefore, the only question the Court need decide is whether [Roger] deserted Heather.

(Internal citations omitted).

---

[6] A deputy was authorized to make a decision in lieu of the commissioner. Because the deputy was acting at the direction of the commissioner, we will treat the deputy's decision as if it were made by the commissioner.

The district court found the facts did not support a finding that Roger deserted Heather. The court noted Heather's child remained in the marital home with Roger, Roger tried to remain in contact with Heather, and in 2011 and 2012 he listed his marital status as "married filing separately" on his income tax forms. The court found Roger did not have the requisite intent to desert Heather. The court determined the case should be remanded to the commissioner for a ruling on whether Heather's death was barred by the willful injury exception. Linnhaven appeals the decision of the district court.

## II.     Standard of Review

"When reviewing the decision of the district court's judicial review ruling, we determine if we would reach the same result as the district court in our application of the Iowa Administrative Procedure Act." *Sladek v. Emp. Appeal Bd.*, 939 N.W.2d 632, 637 (Iowa 2020) (quoting *Insituform Techs., Inc. v. Emp. Appeal Bd.*, 728 N.W.2d 781, 787 (Iowa 2007)). The commissioner's factual findings are upheld on appeal if they are supported by substantial evidence when the record is viewed as a whole. *Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 366 (Iowa 2016). We consider whether there is substantial evidence to support the findings made by the commissioner, not whether the evidence could support different findings. *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009).

## III.     Desertion of Spouse

Linnhaven claims the district court erred by finding Roger did not desert Heather. It asserts that Roger and Heather intended to terminate their marriage relationship when they separated in 2011, before Heather's injury in November 2012. It points to the following testimony by Roger:

Q. Did you have differences over finances? A. Yes. I was paying for a majority of everything.

Q. And was that something you didn't want to be doing? You didn't want to be paying for a majority of everything? A. Yes, that's correct.

Q. Did you have any specific discussions when you separated in 2011 with Ms. Blasdell regarding the reasons why you separated?

. . . .

A. I couldn't—I couldn't handle paying rent by myself.

From this testimony, Linnhaven claims Roger separated from Heather because he did not want to pay her expenses. Linnhaven claims Roger's desertion of Heather was not because of any fault by Heather and argues that Roger is not entitled to death benefits based on section 85.42(1)(a).

Section 85.31(1)(a) provides:

When death results from the injury, the employer shall pay the dependents who were wholly dependent on the earnings of the employee for support at the time of the injury, during their lifetime, compensation upon the basis of eighty percent per week of the employee's average weekly spendable earnings, commencing from the date of death as follows:

(1) To the surviving spouse for life or until remarriage, provided that upon remarriage two years' benefits shall be paid to the surviving spouse in a lump sum, if there are no children entitled to benefits.

Under section 85.42(1), a surviving spouse is presumed to be wholly dependent on the deceased spouse. *Rojas v. Pine Ridge Farms, L.L.C.*, 779 N.W.2d 223, 233 (Iowa 2010); *Carter v. Alter Trading Corp.*, No. 11-1697, 2012 WL 4898275, at *2 n.6 (Iowa Ct. App. Oct. 17, 2012). There is an exception "[w]hen it is shown that at the time of the injury the surviving spouse had willfully deserted deceased without fault of the deceased, then such survivor shall not be considered as dependent in any degree." Iowa Code § 85.42(1)(a). The exception would only apply if Roger deserted Heather without fault by Heather. *See id.*

The exception involving a deserting spouse was discussed in *James Black Dry Goods Co. v. Iowa Industrial Commissioner*, where the primary issue was whether the wife had deserted the husband prior to his death in a work-related accident. 173 N.W. 23, 24 (Iowa 1919). After several years of marriage, the husband left the marital residence due to "serious financial difficulty" and traveled to find work. *Id.* The husband and wife met periodically, and the husband mailed money to the wife. *Id.* at 25.

The Iowa Supreme Court stated, "the dependence is presumed unless there is desertion, where the marriage relation between husband and wife is involved." *Id.* at 24. In order to show desertion, there must be proof of these elements: (1) "the cessation of the marriage relations"; (2) "the intent to desert"; (3) "a continuance of the desertion during the statutory period"; and (4) "the absence of consent or misconduct of the deserted party." *Id.* Looking at the facts of the case, the court found:

> We are of opinion that the evidence falls far short of showing desertion on the part of [the wife]. The mere fact that they did not live together is not enough. We have held that separation and desertion are not synonymous. . . . We have said in a divorce case that the act is willful when there is a design to forsake the other spouse willfully or without cause, and thereby break up the marital union, deliberate intent to cease living with the other as spouse, abnegation of all duties of the marriage relations, the actual ceasing of cohabitation, and the intent to desert.

*Id.* at 25. The court noted that if spouses agreed to live apart, there was no desertion. *Id.*

First, we recognize the case law on desertion, which borrowed language from marital cases in the same timeframe, is over 100 years old.[7] However, neither party urges for modification of these standards defined by this case law. The evidence shows Roger and Heather lived separately for financial reasons. They rented a house in Delhi and lived there with Heather's son. After Heather lost her job, she looked for new employment in the area but was unsuccessful. They could not afford the rent for the Delhi home on Roger's income alone. Heather moved first to Clinton, and then to Cedar Rapids looking for a job. Heather's son remained living with Roger, although at times he also lived with Heather. Roger also had a girlfriend residing with him for some time, and Heather dated as well. Roger and Heather maintained friendly relations, talking often. Roger sometimes gave money to Heather, and sometimes she gave money to him. At the time of the November 2012 injury, Heather was the beneficiary of Roger's life insurance policy, was listed as a driver on his car insurance, and was listed as an emergency contact at his work. In 2011 and 2012, Roger filed his taxes as married filing separately.

We find the facts are similar, although not identical, to those in *James Black*, where the court determined there was insufficient evidence of desertion. *See* 173 N.W. at 25. As the court noted, "separation and desertion are not synonymous." *Id.* Furthermore, when spouses agree to live apart, there is no desertion. *Id.* The evidence does not show Roger had an intent to desert Heather without the fault of Heather. Heather left the martial home. The parties agreed to live separately due

---

[7] As noted by the district court, the case law relied on by the parties derives from language concerning fault divorces.

to their financial circumstances, and based on their mutual agreement, "there is no desertion." *See id.*

We affirm the district court. Substantial evidence does not support a finding that Roger deserted Heather, without fault by Heather, under section 85.42(1)(a).

## IV. Other Issues

Linnhaven asserts that we should affirm the district court's conclusion the commissioner's designee could issue the final agency decision. Roger did not cross-appeal and does not claim the district court erred on this issue. We conclude there is no issue to be addressed, as both parties agree with the district court's decision on this matter.

Linnhaven also asserts that we should find it is not barred from raising the defense of spousal desertion based on the doctrine of estoppel. The district court did not address the issue, stating, "The Court passes on the question of whether [Linnhaven] is estopped from arguing this point because the law is clear on the matter of whether [Roger] and Heather were still legally married at the time of injury." Nor does Roger raise the issue of estoppel on appeal. We find there is no need to address the issue, as no party is claiming Linnhaven is estopped from raising the issue of spousal desertion.

## V. Conclusion

We affirm the district court's ruling. The commissioner's decision that Roger deserted Heather without the fault of Heather was not supported by substantial evidence within the meaning of Iowa Code section 85.42(1)(a).

**AFFIRMED.**